United States District Court
Southern District of Texas
**ENTERED**
May 08, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARK JAMAL KEAREY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-80 |
| | § | |
| BRYAN COLLIER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO GRANT IN PART AND DENY IN PART DEFENDANTS' AMENDED
## MOTION TO DISMISS

In this prisoner civil rights action, Plaintiff Mark Jamal Kearey asserts claims of retaliation as well as violations of the Religious Land Use and Institutionalized Persons Act (RLUPIA), 42 U.S.C. § 2000cc, *et seq*., and the First Amendment. On December 1, 2017, Defendants Bryan Collier, Madeline Ortiz, Oliver Bell, Jennifer Smith, Miguel Martinez, and Rick B. Packard filed an Amended Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. 35). For the reasons stated herein, it is respectfully recommended that Defendants' amended motion to dismiss be GRANTED in part and DENIED in part.

## I.   JURISDICTION.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## II.   PROCEDURAL BACKGROUND.

Plaintiff Mark Jamal Kearey, proceeding *pro se* and *in forma pauperis*, is an inmate incarcerated at the McConnell Unit of the Texas Department of Criminal Justice,

Criminal Institutions Division ("TDCJ") in Beeville, Texas.  Plaintiff's allegations in this case arise in connection with his assignment to the McConnell Unit.

On October 28, 2016, Plaintiff filed his original complaint, naming the following McConnell Unit and TDCJ officials as defendants: (1) Mr. Collier; TDCJ Executive Director; (2) Ms. Ortiz, TDCJ Director of Rehabilitations Program; (3) Michael Upshaw, TDCJ Director of Support Operations; (4) Vance Drum, TDCJ Director of Chaplaincy Operations; (5) Mr. Bell, Chairman of the Texas Board of Criminal Justice; (6) Ms. Smith, TDCJ Mail Systems Coordinator; (7) Mr. Martinez, Warden of the McConnell Unit; (8) Mr. Packard, a Chaplain of the McConnell Unit; (9) Christian Luna, Chaplain of the McConnell Unit; and (10) Janet Salles, Mailroom Administrative Assistant at the McConnell Unit.  He sought declaratory, injunctive, and monetary relief.

The undersigned conducted a *Spears* hearing on April 27, 2017.  Plaintiff subsequently moved the Court to amend his complaint and voluntarily dismiss some of the defendants.  (D.E. 11, 12).  Plaintiff's motions were granted.  (D.E. 13).  Thus, Plaintiff's claims against Defendants Upshaw, Luna, Salles, and Drum in their individual and official capacities were dismissed without prejudice, and his amended complaint was docketed.  (D.E. 13, 14).  In his amended complaint, Plaintiff asserted RLUIPA, First Amendment, and retaliation claims.  On June 8, 2017, the undersigned ordered service of Plaintiff's amended complaint on Defendants Collier, Ortiz, Bell, Smith, Martinez, and Packard (collectively referred to as "Defendants").  (D.E. 16).

On July 24, 2017, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (D.E. 21).  Plaintiff responded by filing his second motion

2 / 25

for leave to file an amended complaint, which included his proposed Second Amended Complaint. (D.E. 24). On September 7, 2017, the undersigned granted Plaintiff's motion and directed the Clerk of the Court to docket the Second Amended Complaint. (D.E. 24, 25).[1]

Plaintiff's Second Amended Complaint is the operative pleading in this case,[2] as supplemented by his sworn statements provided in the *Spears* evidentiary hearing. Plaintiff stated therein that he sues: (1) TDCJ Executive Director Collier in his official capacity; (2) Chairman Bell in his official capacity; (3) TDCJ Director of Rehabilitations Program Ortiz in her official capacity; (4) TDCJ Mail Systems Coordinator Smith in her official capacity; (5) Warden Martinez in his official and individual capacity; and (6) Chaplain Packard in his individual capacity. (D.E. 24, pp. 1-2).

On December 1, 2017, Defendants filed their amended motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6). (D.E. 35). Thereafter, Plaintiff filed his response to Defendants' motion to dismiss. (D.E. 42).

## III. PLAINTIFF'S ALLEGATIONS.

Plaintiff made the following allegations relevant to the pending amended motion to dismiss either in his Second Amended Complaint (D.E. 24) or at the *Spears* hearing. Plaintiff, who is designated as a practitioner of the eastern religious faith of Taoism,

---

[1] A review of Court records reveals that the Second Amended Complaint, as contained in Docket Entry 24, was not formally docketed. The undersigned, nevertheless, recognizes Docket Entry 24 as Plaintiff's Second Amended Complaint, and is so deemed.

[2] The Fifth Circuit has held that an amended complaint supersedes the original and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading. *Canal Ins. V. Coleman*, 625 F.3d 244, 246 n.2 (5th Cir. 2010). Because Plaintiff's Second Amended Complaint does not do so, it is the operative pleading in this case.

participates in an Eastern Religious Study Group at the McConnell Unit.   In May of 2016, Plaintiff approached Chaplain Packard with a request to update the materials covering the eastern religious practice of Taoism.   Plaintiff explained to Chaplain Packard that "there is not even one text or book that deals with Taoism or Qigong." (D.E. 24, p. 2).   Plaintiff requested from Chaplain Packard to acquire a certain eastern religious book and video entitled "Shaolin Qigong- Energy in Motion."  (D.E. 24, p. 2). Another inmate named Willie Swift sought to donate this DVD and book to the prison.

When the Eastern Religious Study Group did not receive the materials through a package sent to the prison, Plaintiff sought an update from Chaplain Packard as to the status of the package.   Chaplain Packard initially informed Plaintiff that he had not received the materials.   Chaplain Packard subsequently admitted that the package had been received but needed to be reviewed.   One week later, Chaplain Packard informed Plaintiff and inmate Swift that the package "was denied as a security threat because somebody was swing [sic] a stick."  (D.E. 24, p. 3).   The package was then sent to the "major" for approval.   After not hearing any notice or decision from the "major" about the package for three or four weeks, Plaintiff approached Chaplain Packard who became "slightly hostile" and told Plaintiff to stop coming to his office.  (D.E. 24, pp. 3-4).

Several members of the religious study group filed grievances, with Plaintiff filing his grievance on July 21, 2016.   According to Plaintiff, Chaplain Packard retaliated one week later by taking away various moving meditation videos and books that had already been approved for use by the Eastern Religious Study Group.   He also removed the mats and blankets used by the group in their yoga and moving meditation sessions.   Chaplain

4 / 25

Packard informed Plaintiff that: (1) the moving meditation materials were taken because of the grievances previously filed; (2) the Eastern Religious Study Group needed a free world volunteer in order to practice any type of moving meditation; and (3) only a class room setting would work.  Chaplain Packard did not seem to care that eastern religious meditations required movement.  Until that time, the Eastern Practice Study Group had performed their moving meditations without an outside volunteer for two to three years. As a result, some inmates quit the Eastern Religious Study Group.

Plaintiff testified at the *Spears* hearing that his Step 1 grievance was denied because the moving meditations performed by inmates without an outside volunteer represented a security threat.  Plaintiff subsequently went to the unit's law library and requested the chaplaincy manual.  Plaintiff indicated that the applicable policy regarding Buddhism and Eastern religions in general did not allow for moving meditations without an outside volunteer.  However, according to a policy recently set forth in AD 87.30, inmates could practice their religion for an hour several days a week in any way they saw fit.

Plaintiff also learned from the chaplaincy manual that the donor was supposed to get the religious materials returned if they were rejected.  Plaintiff was advised through the rejection of his Step 1 and 2 grievances that all materials mailed to offenders are subject to mailroom rules and regulations and that the Chaplaincy has no authority to approve or deny such materials.

Plaintiff discovered that the mailroom had no policy reflecting the standards under RLUIPA.  He then provided the mailroom with a list of eastern religious books to see if

the books would be approved or denied.  Nobody from the mailroom answered for a month.  Plaintiff asked inmate Swift to order two of the books to be donated to the Taoist practitioners in the prison.  These books were: (1) "Tendon Nei Kung (Building Strength, Power, and Flexibility in the Joints)"; and (2) Life Pulse Massage (Taoist Techniques for Enhanced Circulation and Detoxification."  (D.E. 24, p. 5).

The books identified by Plaintiff were denied approval by Mailroom Administrative Assistant Salles pursuant to a mailroom policy because they contained criminal and bestial behavior.  Plaintiff's Step 1 grievance on this issue was denied because Plaintiff had not personally ordered the books.  TDCJ Mail Systems Coordinator Smith denied Plaintiff's Step 2 grievance because there was no indication that Ms. Salles had looked on the computer mainframe to see if the books were allowed.

Plaintiff wrote letters and I-60s to all of the Defendants named in this action and spoke with Warden Martinez on several occasions.  Plaintiff informed all of them that the actions taken had substantially burdened his right to practice the eastern religion of Taoism.  Plaintiff stated that Warden Martinez and none of the other defendants assisted Plaintiff after being notified of the issues affecting Plaintiff and that Warden Martinez failed to investigate or supervise Chaplain Packard.

According to Plaintiff, the books denied to him each discussed vital components of Taoism such as energy, vitality, and spirit.  While the class no longer meditates together, Plaintiff testified that he practices some of the moving meditations in his cell and that he is allowed to pray in his cell.  Nevertheless, due to the actions taken, Plaintiff states that he has been forced to "significantly modify his religious behavior" in that he

cannot "practice moving meditation to reach his desired state of spirituality." (D.E. 24, p. 6).

Plaintiff further explains that, in Taoism, it is important that moving meditations follow sitting meditations so that the mind can stay in balance. Plaintiff nevertheless testified that he could practice in private and that it is not "written in stone" that meditations be conducted in a group setting. Plaintiff has not been able to find a suitable outside volunteer to lead the moving mediation classes. No official has aided Plaintiff in finding an outside volunteer. Plaintiff clarified that he seeks injunctive relief in the form of viewing videos, reading books, and performing the moving meditations in a group setting. Plaintiff also seeks declaratory and monetary relief against Defendants.

## IV.   LEGAL STANDARD.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the

record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist. *Id.*

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face.*'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## V. DISCUSSION.

### A. Official Capacity Claims

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As

such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

Defendants Collier, Ortiz, Bell, Smith, and Martinez contend that Plaintiff's claims against them for money damages in their official capacities are barred by the Eleventh Amendment. (D.E. 35, p. 7). The undersigned agrees. Thus, it is respectfully recommended that Defendants' amended motion to dismiss (D.E. 35) be granted to the extent that Plaintiff's claims for money damages against Defendants Collier, Ortiz, Bell, Smith, and Martinez in their official capacities be dismissed as barred by the Eleventh Amendment.

### B. Injunctive Relief Claims against Defendant Bell

Defendants contend that Plaintiff's claims seeking injunctive relief against Chairman Bell should be dismissed for lack of Article III standing. (D.E. 35, pp. 7-8). Defendants have attached an affidavit demonstrating that Defendant Bell's term as TDCJ chairman ended on August 26, 2015. (D.E. 35-2). The undersigned agrees with Defendants that Defendant Bell currently lacks the authority to effectuate any prospective injunctive relief on behalf of Plaintiff. *See Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (explaining that plaintiffs "have no case or controversy" with defendants who

have no power to redress the injuries alleged). Accordingly, it is respectfully recommended that Defendants' amended motion to dismiss be granted to the extent that Plaintiff's First Amendment and RLUIPA claims against Defendant Bell in his official capacity for injunctive relief should be dismissed.

### C.  RLUIPA and First Amendment Claims

#### *(1)  Applicable Law*

Section 3 of the RLUIPA concerns institutionalized persons and states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> > (1)   is in furtherance of a compelling governmental interest; and
> >
> > (2)   Is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a).

RLUIPA, which provides a private cause of action, *id.,* § 2000cc-2(a), implements a burden-shifting framework. *Ware v. Louisiana Dep't of Corr.*, 866 F.3d 263, 268 (5th Cir. 2017); *Chance v. Tex. Dep't of Crim. Justice*, 730 F.3d 404, 410-11 (5th Cir. 2013). The plaintiff's initial burden is two-fold: he or she must show that (1) the relevant religious exercise is "grounded in a sincerely held religious belief" and (2) the government's action or policy "substantially burden[s] that exercise" by, for example forcing the plaintiff "to 'engage in conduct that seriously violates [his or her] religious beliefs.'" *Holt v. Hobbs,* --- U.S. ---, 135 S. Ct. 853, 862 (2015) (quoting *Burwell v.*

*Hobby Lobby Stores, Inc.,* --- U.S. ---, 134 S. Ct. 2751, 2775 (2014)).  If the plaintiff carries this burden, the government bears the burden of proof to show that its action or policy (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest.  42 U.S.C. § 2000cc-1(a); *Holt,* 135 S. Ct. at 863.

Despite RLUIPA's express purpose to protect the religious observances of individualized persons, the statute does not give courts carte blanche to second-guess the reasoned judgments of prison officials.  Indeed, while Congress enacted the RLUIPA to address the many "frivolous or arbitrary" barriers impeding institutionalized persons' religious exercise, it nevertheless anticipated that courts entertaining RLUIPA challenges "would accord 'due deference to the experience and expertise of prison and jail administrators.'"  *Cutter v. Wilkinson,* 544 U.S.709, 716-17 (2005) (*quoting* 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sens. Hatch and Kennedy on the RLUIPA)).  The Supreme Court has cautioned that "[w]e do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety," and "an accommodation must be measured so that it does not override other significant interests."  *Id.* at 722.

The First Amendment to the United States Constitution, in turn, provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. U.S. Const., amend. I.  The United States Supreme Court has held that prisoners retain their First Amendment right, including the right to free exercise of religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

Nevertheless, an inmate retains only those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objective. *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 349 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In *Turner v. Safley*, the Supreme Court set forth four factors that a court should consider in determining whether a reasonable relationship exists between a regulation and the governmental interest: (1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional right will have on other inmates, guards and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89-90; *see also Chriceol v. Phillips*, 169 F.3d 313, 316 (5th Cir. 1999).

### (2)    *Analysis of Plaintiff's RLUIPA/ First Amendment Claims*

Plaintiff claims pursuant to RLUIPA that he has suffered a substantial burden on his religious exercise based on his allegations that: (1) Defendants effectively denied him

access to certain eastern religious texts and videotapes; (2) Defendants denied him the ability to practice moving meditations and yoga within a group setting; and (3) he was required to obtain an outside volunteer for his moving meditations.  Plaintiff asserts that his First Amendment rights were violated in the same fashion by Defendants.  Defendants contend in their amended motion to dismiss that the actions cited by Plaintiff did not amount to either a RLUIPA or First Amendment violation.  (D.E. 35, pp. 9-13).

RLUIPA broadly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  The Fifth Circuit has determined that governmental action or regulation creates a "substantial burden" on a religious exercise if it "truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs."  *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004).  A governmental action or regulation does not rise to the level of a substantial burden on religious freedom if it "merely prevents the adherent from either enjoying some benefit that is not otherwise generally allowed."  *Id.*

Plaintiff alleges that he initially approached Chaplain Packard on behalf of the Eastern Religious Study Group with a request to update the materials covering the eastern religious practice of Taoism, primarily because the materials did not include any texts or books on the eastern religious practices of Taoism or Qigong.  (D.E. 24, p. 2).  While another inmate's attempt to donate certain books and videotapes on these subjects were rejected on two occasions, Plaintiff personally engaged in efforts to complain to prison

officials about the denial of these eastern religious materials and to inquire separately whether other types of eastern religious books would be acceptable.

Plaintiff's allegations further indicate that his Eastern Religious Study Group was deprived of the ability to participate together in Eastern religious practices involving moving meditations by taking away from the group videos, books and mats. Plaintiff acknowledged that group settings for moving meditations were not "written in stone" and that he could perform some moving meditations in his own cell. Nevertheless, his overall testimony indicated that moving meditations in a group setting were essential to achieve the proper balance and desired state of spirituality.

According to Plaintiff, the group was informed that it needed a free world volunteer to lead the moving meditations even though it had been allowed to participate as a group in moving meditations for two to three years without such a volunteer. Plaintiff acknowledged that the applicable TDCJ policy regarding Buddhism and Eastern religions in general did not allow for moving meditations without an outside volunteer.

In *Adkins*, the Fifth Circuit Court of Appeals considered a RLUIPA claim brought by a member of the Yahweh Evangelical Assembly ("YEA") based on the inability of the YEA to congregate on regular Sabbath and YEA holy days. *Adkins*, 393 F.3d at 571. After citing the TDCJ's general policy which required the presence of an outside volunteer for group religious meetings, the Fifth Circuit concluded that summary judgment was proper as to the prisoners' RLUIPA claim because the plaintiff had not established that the volunteer policy imposed a substantial burden on the exercise of religion. *Id.*    The Fifth Circuit subsequently recognized that *Adkins* did not set forth a

"*per se* rule that the TDCJ's volunteer requirement could never impose a substantial burden on a prisoner's exercise of religion."  *Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d 599, 614 (5th Cir. 2008).

Thus, even assuming the applicability of TDCJ's volunteer requirement policy, it does not necessarily preclude Plaintiff's RLUIPA claims at this stage in the proceedings. Due to the actions taken by prison officials in denying certain eastern religious materials and the opportunity to engage in the eastern religious practice of moving meditations in a group setting, Plaintiff alleges that he has been forced to "significantly modify his religious behavior" in that he cannot "practice moving meditation to reach his desired state of spirituality."  (D.E. 24, p. 6).  Accepting his allegations as true, Plaintiff has stated plausible RLUIPA claims.  *Compare Ryals v. Escobar*, No. 14-CV-117, 2015 WL 4590219, (W.D. Tex. Jan. 27, 2015) (rejecting prisoner's RLUIPA claims due to his failure to allege that the denial of certain religious materials modified his religious behavior in any way).[3]  Defendants' amended motion to dismiss (D.E. 35), therefore, should be denied to the extent it seeks dismissal of Plaintiff's RLUIPA claims.

Furthermore, Plaintiff's allegations are sufficient at this stage to warrant further factual development of his First Amendment claims, specifically whether the actions taken by Chaplain Packard violated Plaintiff's right to the free exercise of his eastern religion.  *See Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 861 (5th Cir. 2004)

---

[3] Defendants assert that Plaintiff lacks standing to assert any claims regarding the denial of religious texts because another inmate attempted to donate the religious texts and videos on two occasions and was effectively denied the religious materials.  (D.E. 35, p. 6).  As discussed above, however, Plaintiff's allegations detail his efforts to persuade prison officials to allow the eastern religious texts and videos to be brought into the unit.  Further factual development will allow the Court to fully consider whether Plaintiff has suffered a personal injury based on Defendants' actions in prohibiting the requested texts and videos and whether he has standing to bring such claims.

(explaining that one pertinent question in considering the *Turner* factors in a First Amendment analysis is "whether . . . the prison affords the inmates opportunities to exercise their faith"). Thus, accepting Plaintiff's allegations as true, Plaintiff has stated plausible First Amendment claims against Chaplain Packard. Defendants' amended motion to dismiss (D.E. 35), therefore, should be denied to the extent it seeks dismissal of Plaintiff's First Amendment claim against Chaplain Packard. The undersigned now turns toward determining whether Plaintiff may sue any additional defendants in connection with his RLUIPA/First Amendment claims.

### *(3)    Proper Defendants*

### RLUIPA

With respect to his RLUIPA claims, Plaintiff seeks to hold Defendants Martinez and Packard liable in their individual capacities. (D.E. 24, pp. 1-2). Defendants contend, however, that RLUIPA does not authorize individual capacity claims. (D.E. 35, p. 17).

To the extent Plaintiff is attempting to sue Defendants Martinez and Packard in their individual capacities under RLUIPA, such claims are barred. *See Sossoman v. Lone Star State of Texas,* 560 F.3d 316, 329 (5th Cir. 2009). In *Sossoman,* the Fifth Circuit expressly held that even though RLUIPA "unambiguously creates a private right of action for injunctive and declaratory relief," it found no statutory authority for individual capacity actions in the statute. *Id.* at 329. Thus, it is respectfully recommended that Defendants' amended motion (D.E. 35) to dismiss be granted to the extent that their RLUIPA claims against Defendants Martinez and Packard in their individual capacities should be dismissed with prejudice.

In his Second Amended Complaint, Plaintiff seeks to hold Defendants Collier, Bell, Ortiz, Smith, and Martinez liable in their official capacities as to his RLUIPA claims.  (D.E. 24, pp. 1-2).  For purposes of injunctive relief, TDCJ Executive Director Collier is the appropriate official to provide Plaintiff's requested injunctive relief with respect to his RLUIPA claims as Defendant Collier is responsible for implementing and enforcing policies impacting a prisoner's right to practice his religious faith. Accordingly, it is respectfully recommended that Plaintiff's RLUIPA claims against Defendants Bell, Ortiz, Smith, and Martinez be dismissed pursuant to § 1915(e)(2)(B).[4]

## First Amendment

Defendants Bell, Smith, Ortiz, and Martinez contend that Plaintiff seeks to hold them liable as supervisory officials under § 1983.   However, according to these defendants, Plaintiff alleges no facts in his Second Amended Complaint to indicate they personally interfered with Plaintiff's right to practice his eastern religion or otherwise implemented any policies that resulted in Plaintiff's injuries.   (D.E. 35, p. 16). Defendants contend instead that Executive Director Collier is the appropriate defendant as he is responsible for the implementation and enforcement of TDCJ policies.  (D.E. 35, p. 16).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).   There is no vicarious or

---

[4] Defendants have not formally moved for the dismissal of his RLUIPA claims against Defendants Bell, Ortiz, Smith, or Martinez on the basis that these defendants are not capable of providing the injunctive relief requested. Nevertheless, § 1915(e)(2)(B) mandates dismissal "at any time" if the court determines that the action "fails to state a claim on which relief may be granted" or "is frivolous or malicious."  28 U.S.C. 1915(e)(2)(B).

*respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Thus, a supervisor who is not personally involved is liable only if he has implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304. ). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

Plaintiff alleged that Defendants Bell, Smith, Ortiz, and Martinez were made aware of the alleged constitutional violations but failed to remedy the situation and that Warden Martinez failed to properly supervise Chaplain Packard. Plaintiff further complains about Defendant Smith's denial of one of his grievances. Plaintiff's allegations, however, fail to suggest that Defendants Bell, Smith, Ortiz, or Martinez personally interfered with Plaintiff's right to practice his religious faith or otherwise implemented any unconstitutional policies causing injury to Plaintiff.

Furthermore, any responses by Defendant Smith to Plaintiff's grievance is not actionable conduct under § 1983. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir.

2005).  Because Plaintiff has not stated a plausible claim against Defendants Bell, Smith, Ortiz, and Martinez in their supervisory capacities, it is respectfully recommended that Defendants' amended motion to dismiss (D.E. 35) be granted to the extent that his First Amendment claims against these defendants be dismissed with prejudice.

###     D.     Retaliation Claims

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'"  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).  "A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."  *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights.  *Morris*, 449 F.3d at 686.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."  *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)).  An inmate must allege more than his personal belief that he is

the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)
(citation omitted).

"Mere conclusory allegations of retaliation will not be enough to withstand a
proper motion for dismissal of the claim."  *Jones*, 188 F.3d at 325.  The inmate must
produce direct evidence of motivation or a chronology of events from which retaliation
may be inferred.  *Id.*  In other words, a successful claim of retaliation requires a showing
that, but for some retaliatory motive, the complained of adverse incident would not have
occurred.  *Woods*, 60 F.3d at 1166.

### (1) Chaplain Packard

Plaintiff claims that, after he and other members of the Eastern Religious Study
Group had filed grievances, Chaplain Packard retaliated one week later by taking away
various moving meditation videos and books that had already been approved for use by
the Eastern Religious Study Group and by removing the mats and blankets used by the
group in their yoga and moving meditation sessions.  Plaintiff alleges that Chaplain
Packard informed Plaintiff that: (1) the moving meditation materials were taken because
of the grievances previously filed; (2) the Eastern Religious Study Group needed a free
world volunteer in order to practice any type of moving meditation; and (3) only a class
room setting would work.

Defendants contend that Plaintiff cannot establish the requisite "but for" causation
because the applicable TDCJ policy in fact requires outside volunteers to attend certain
religious gatherings such as the one involving Plaintiff's moving meditation group.  Thus,

Defendants contend that Chaplain Packard's actions, therefore, were motivated by a desire to implement existing TDCJ policy.  (D.E. 35, p. 14).

According to Plaintiff, however, his Eastern Practice Study Group had been performing their moving meditations without an outside volunteer for two to three years leading up to the time when Chaplain Packard removed the moving meditation materials. Plaintiff's allegations suggest that the "outside volunteer" policy had been ignored and waived by prison officials and that Chaplain Packard's primary motivation in stopping the moving meditation class was due to the filing of grievances against him by Plaintiff and other members of the Eastern Religious Study Group.

Accepting Plaintiff's allegations as true, Plaintiff has stated a plausible retaliation claim against Chaplain Packard in his individual capacity. *See Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989) (recognizing that a prison official may not retaliate against an inmate for using the grievance system).  As such, Defendants' amended motion to dismiss (D.E. 35) should be denied to the extent it seeks dismissal of Plaintiff's retaliation claim against Chaplain Packard.

### (2)  Warden Martinez

Plaintiff's allegations indicate that Warden Martinez was made aware of Chaplain Packard's purported retaliation but failed to properly supervise Chaplain Packard and otherwise remedy the situation.   Plaintiff's allegations, however, fail to suggest that Warden Martinez personally participated in any retaliatory acts or otherwise implemented any unconstitutional policies causing injury to Plaintiff.  *See Mouille*, 977 F.2d at 929. Because Plaintiff has not stated a plausible retaliation claim against Warden Martinez in

21 / 25

his supervisory capacity, it is respectfully recommended that Defendants' amended motion to dismiss (D.E. 35) be granted to the extent that his retaliation claim against this defendant be dismissed with prejudice.

### E.    Qualified Immunity

Defendants Martinez and Packard contend that they are entitled to qualified immunity which shields them from constitutional liability in their individual capacities. (D.E. 35, pp. 17-19).   The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.   *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).   "To discharge this burden, the plaintiff must satisfy a two-prong test.   *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).   First, he must claim that the defendant committed a constitutional violation under current law.   *Id.*   Second, he must claim that the defendant's action was objectively reasonable in light of the law that was clearly established at the time of the complained-of actions.   *Id.*

As discussed above, Plaintiff has failed to state a constitutional claim against Warden Martinez in his supervisory capacity.   Because Plaintiff has failed to state cognizable constitutional claims against Warden Martinez in his individual capacity, it is

22 / 25

not necessary to examine whether his actions were objectively reasonable. Accordingly, it is respectfully recommended that Defendants are entitled to qualified immunity with respect to Plaintiff's First Amendment and retaliation claims asserted against him in his individual capacity.

Plaintiff, however, has stated plausible First Amendment and retaliation claims against Chaplain Packard. Based on the allegations in the Second Amended Complaint, as supplemented by his testimony at the *Spears* hearing, the undersigned cannot conclude at this time that Chaplain Packard acted objectively reasonable in light of clearly established law. Because Chaplain Packard is not entitled to qualified immunity, the undersigned respectfully recommends that Defendant's amended motion to dismiss (D.E. 35) be denied on the issue of qualified immunity as to this defendant.[5]

## VI.  RECOMMENDATION.

For the foregoing reasons, it is respectfully recommended that Defendants' Amended Motion to Dismiss (D.E. 35) be GRANTED in part and DENIED in part. It is respectfully recommended that Defendants' motion be GRANTED to the extent that: (1) Plaintiff's claims for money damages against Defendants Collier, Ortiz, Bell, Smith, and Martinez in their official capacities be dismissed as barred by the Eleventh Amendment; (2) Plaintiff's First Amendment and RLUIPA claims against Defendant Bell in his official capacity for injunctive relief should be dismissed; (3) Plaintiff's RLUIPA claims against Defendants Martinez and Packard in their individual capacities be dismissed with

---

[5] Any decision to deny the motion to dismiss on the issue of qualified immunity is without prejudice to Chaplain Packard reasserting same through an appropriate motion for summary judgment. Indeed, the discovery process may reveal additional facts that entitle Chaplain Packard to qualified immunity on his claims. *See Zollicoffer v. Livingston*, 169 F. Supp. 3d 687, 698 (S.D. Tex. 2016).

prejudice; (4) Plaintiff's First Amendment claims against Defendants Bell, Martinez, Smith and Ortiz in their official capacities be dismissed with prejudice; and (5) Plaintiff's retaliation claim against Defendant Martinez in his individual and official capacity be dismissed with prejudice.   It is respectfully recommended further that Defendants' amended motion to dismiss (D.E. 35) be DENIED in all other respects.

It is respectfully recommended further that, pursuant to § 1915(e)(2)(B), Plaintiff's RLUIPA claims against Defendants Bell, Ortiz, Smith, and Martinez be dismissed with prejudice.   Lastly, it is respectfully recommended that Defendants Bell, Martinez, Smith, and Ortiz be DISMISSED with prejudice from this action.   Based on the above recommendations, Plaintiff's claims going forward are as follows: (1) his RLUIPA and First Amendment claims against Defendant Collier in his official capacity; and (2) his First Amendment and retaliation claims against Defendant Packard in his individual capacity.

Respectfully submitted this 8th day of May, 2018.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).